The judgment of the court was pronounced by
Slidell, J.
This action is brought on three promissory notes, made in Pennsylvania. The defendants are the makers, and the plaintiff is payee. In one of them no place of payment is designated; in the two others is the expression, “ payable at the Philadelphia Bank.” No averment was made in the-petition, nor was it proved at the trial, that the two latter notes were presented at any time, at the Philadelphia Bank, nor to the makers any where before suit. The district judge gave judgment for the first note; but directed a non-suit as to the other two, stating that the settled rule in this State is, that presentment at the appointed place is a condition precedent.
That several decisions of our predecessors support the decree of the district judge is undeniable. We are not aware that the precise question has ever come before this court. It now becomes our duty to say, whether we will adhere to what has hitherto been deemed the rule upon this subject in this State.
The point is one whieh has been much discussed. In England, for a long time, the state of the law upon it was uncertain. The Court of King’s Bench had, for some years, adopted the doctrine, that where a bill was accepted, pay *62 able at a particular place, it was not necessary to aver in the declaration and prove a presentment at such place, but that it must be considered matter of defence. The Court of Common Pleas was in the habit of holding otherwise. The question at last came before the House of Lords, in the noted case of Rowe v. Young, 2. Brod. and Bing. 180. The opinions of the twelve judges were taken and laid before the House. Eight judges out of the twelve sustained the doctrine of the King’s Bench. The judgment, however, was reversed. That the decision of the Lords did not satisfy the public mind, may be inferred from the fact of the passage soon thereafter, of the act 1 and 2, Geo. 4, c. 78, in which it was recited, that the rule which it sanctioned was inconvenient in practice. See Chitty, p. 396. The history of the English law on this point is stated at length in the elaborate opinion of the Supreme Court of the United States, in Wallace v. McConnell, 13 Peters, 36.
In the United States also,-the question has been the subject of much discussion ; but there is a vast preponderance of authority in favor of the doctrine maintained by the majority of the twelve judges. Mr. Story, who disapproves it, admits that in America, that doctrine prevails, if not universally, at least to a great extent.
“ The received doctrine in America,” says he, “ seems to be this, that as to the acceptor of a bill of exchange, and the maker of a promissory note, payable at a bank or other specified place, the same rule applies ; that is, that no presentment or demand of payment need be made at the specified place, on the day when the bill or note becomes due, or afterwards, in order to maintain a suit against the acceptor or maker; and, of course, that there need be no averment in the declarations in any suit brought thereon, or any proof at the trial of any such presentment or demand. But that, the omission or neglect is a matter of defence on the part of the acceptor or maker. If the acceptor or maker had funds at the appointed place, at the time, to pay the bill or note, and it was not duly presented, he will in the suit be exonerated; not indeed from the payment of the principal sum, but from the payment of all damages and costs in that suit. If, by such omission or neglect of presentment and demand, he has sustained any loss or injury, as if the bill or note were payable at a bank, and the acceptor or maker had funds there at the time, which have been lost by the failure of the bank, then and in such case, the acceptor or maker will be exonerated from liability to the extent of the loss or injury so sustained.” Story on Promissory Notes, § 228.
The state of the law in this country, upon this point, down to the year 1839, was elaborately considered in the case in 13th Peters, by Mr. Justice Thompson. He there shewed, that in New York, the most highly commercial State in the Union, what may fairly be termed the American doctrine, had been considered settled for thirty years. He cited also the opinions of the Courts of Appeal in Virginia, Maryland, New Jersey, and Tennessee, to the same effect; and added (which however shows that the Louisiana cases had not been brought to his notice,) that the court was not aware of any American case where a con;trary doctrine had been asserted and maintained.
Looking to the state of the law since 1839, in the various appellate tribunals of the other members of this Union, so far as we have been able to ascertain them, we find a continued general adherence to the doctrine. See Payson v. Whitcomb, 15 Pick. 216. Otis v. Berton, 10 N. Hamp. 433. Bond v. Storrs, 13 Conn., 412. Silver v. Henderson, 3 McLean, 165. Titler v. Beckley, 2 Watts and Ser. 458. Montgomery v. Elliott, 6 Alab. 701. Armistead v. Armistead, 10 Leigh, 512. Evans v. Gordon, 8 Port. 346. Washington v. *63 Planters' Bank, 1 How. Miss. 230. Cook v. Martin, 5 Smedes and Mars. 379. Sumner v. Ford, 3 Pike, 389. Butterfield v. Kinsie, 1 Scam. 445. Armstrong v. Caldwell, 1 Scam. 546. Cited in United States Digest Supplement, vol. 2, verlo Promissory Note.
The arguments which have been adduced by the advocates and opponents of this doctrine, it is not necessary now to recapitulate. They are familiar to the profession, and may be found in the opinions of the twelve judges, in Rowe v. Young, in Lord Eldon’s opinion in the same case, of Mr. Justice Thompson, 13 Peters, and of Justice Story in his Treatise on Promissory Notes, &c.
Without presuming to suggest on which side the weight of reasoning advanced by so many able minds prepond erates, we may at least, without impropriety say, that the arguments in favor of the American rule, have been almost universally successful in producing conviction ; and that the doctrine so uniformly maintained, after so long a probation, may be fairly considered as well adapted to the practical purposes of commerce and the ends of justice.
Under such circumstances, what is the duty of this Court in deciding a question which does not rest upon legislation, but upon commercial jurisprudence 1 See Civil Code 1908. It is true, that we have, upon the one hand, the opinions of our predecessors, which are entitled to very great respect; but, on the other, we are met by a vast array of authorities, which are also American, and could not have been announced and persisted in during so many years, without a due consideration of those great interests of commerce, which may be said to be common to the entire Union. He who properly appreciates this community of commercial interests, must be gravely impressed with the practical importance of uniformity throughout the United States, in the rules which relate to so prominent a branch of the commercial law, as that which regulates bills of exchange and promissory notes. That importance becomes additionally impressive, when we contemplate the vast advances which our country is making, in territory and population.
Moved by these considerations, we believe that we are not unduly innovating upon the course of our predecessors, in now adopting a doctrine which has obtained the sanction of an overwhelming majority of the appellant tribunals of the United States.
We therefore are of opinion, that the plaintiff was not bound to aver in his petition, nor prove at the trial, that a demand of payment was made at the Philadelphia Bank ; and that it was matter of defence for the maker to show, that he was in attendance by himself or his agent, and ready at the place designated to pay the money.
There is an averment in the petition, “ that according to the laws of the State of Pennsylvania, the rate of legal interest is fixed at six per cent; and that, in case of promissory notes, where a day certain is fixed for payment, interest is allowed from the day of payment.” No proof of the laws of Pennsylvania has been offered, and under our laws regulating the subject of interest, we cannot allow the plaintiff more than five per cent, and that only from judicial demand, no earlier demand having been proved.
It is, therefore, decreed, that the judgment of the District Court be so amended, as that the plaintiff recover from the said Daniel N. Pope, the further sum of $488 93, and the further sum of $432 45, with interest on said sums respectively, from the 4th December, 1848, until paid, at the rate of five per cent, per annum, and costs in both courts.